## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ABDULLATIIFU MATOVU, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. CIV-26-630-SLP |
| | ) |
| MARKWAYNE MULLIN, et al., | ) |
| | ) |
| Respondents.[1] | ) |

### REPORT AND RECOMMENDATION

Petitioner Abdullatiifu Matovu, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] Chief United States District Judge Scott L. Palk referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 12, and Petitioner replied, Doc 13. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release.

---

[1] Warden Scarlet Grant is not a federal official, so the response is not filed on her behalf. Doc. 12, at 1 n.1.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

## I.      Factual background and procedural history.

Petitioner is a citizen of Uganda who was admitted to the United States on October 2, 2022 on an A-2 diplomatic visa under 8 U.S.C. § 1101(a)(15)(A)(ii). Doc. 1, at 2, 8. He has no criminal history, a valid work permit, and has not missed a court hearing. *Id.* at 8. He sought asylum and withholding of removal on December 1, 2022. *Id.* (citing Ex. 2).

Oklahoma Highway Patrol stopped Petitioner on January 21, 2026. Doc. 13, Ex. 2, at 2. After determining he was present in the United States illegally, Immigrations and Customs Enforcement (ICE) took him into custody and transported him to the Logan County Jail. *Id.*

The next day, a Department of Homeland Security (DHS) border official served Petitioner with a warrant for his arrest. Doc. 1, Ex. 3. And on January 23, 2026, DHS served him with a Notice to Appear (NTA), charging him with violating Section 237(a)(1)(C)(i) of the Immigration and Nationality Act (INA), for failing to maintain or comply with the conditions of his nonimmigrant status. Doc. 12, Ex. 2, at 1-2. Petitioner's removal proceedings are pending with an individual hearing scheduled for June 23, 2026. *See* Executive Office of Immigration Review Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited May 18, 2026).

## II.     Petitioner's claims.

2

Petitioner raises three grounds for relief:

Ground One: Violation of Due Process (Arbitrary Detention);

Ground Two: Violation of 8 U.S.C. § 1225(b)(2); and

Ground Three: Violation of the Administrative Procedure Act.

Doc. 1, at 17-21. He seeks a prohibition on his transfer without the Court's approval;[4] a declaration that his detention is unlawful without an individualized determination; his immediate release from custody; and the return of his seized property upon release. *Id.* at 21. He also seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(2). *Id.*

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are

---

[4]   The Court addressed Petitioner's request in part in its Order for Response, Doc. 9, at 2, requiring Respondents to provide the Court with "**72-hours** advance notice" before transferring him to another district.

properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Discussion.

### A.    Petitioner is entitled to due process.

Petitioner entered the United States with an A-2 diplomatic visa, which was valid through the "[D]uration of [S]tatus." Doc. 1, at 8 (citing Ex. 1)). He claims ICE arrested him without a warrant and for no apparent reason. *Id.* He claims he received no notice when he was transferred to the Logan County Jail, and thereafter, to the Cimarron Correctional Facility. *Id.*

Respondents argue ICE properly arrested Petitioner under § 1226 based on probable cause to believe he is removable from the United States. Doc. 12, at 2. Respondents maintain the arrest warrant was served on Petitioner on January 22, 2026, and that he received a bond hearing on or about February 5, 2026, where the Immigration Judge (IJ) found he posed a risk of flight. *Id.* at 2-3 (citing Ex. 1). The Court should agree with Petitioner and find he was denied due process.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical

4

restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them.").

### B.    Petitioner was arrested without a warrant.

Respondents agree Petitioner is in removal proceedings, and not some form of expedited removal proceedings. *See* Doc. 12, at 3-4. DHS may begin removal proceedings against a noncitizen who "is living in the United States without authorization" under § 1229(a) of the INA through an NTA. *Guzman Chavez*, 594 U.S. at 527 (citing 8 U.S.C. § 1229(a)). Federal regulations require that a noncitizen who is placed in § 1229a removal proceedings receive written notice of the proceedings via an NTA. *See* 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section 1229a of this title, written notice (in this section

5

referred to as a 'notice to appear') shall be given in person to the [noncitizen]."). The notice acts as a charging document informing the noncitizen of the specific charges against him and outlining their legal and factual basis. *See Jimenez-Perez v. U.S. Att'y Gen.*, 817 F. App'x 676, 680 (11th Cir. 2020) ("An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. An NTA is a charging document." (citation omitted) (internal quotation marks omitted)).

"The INA further provides that DHS may arrest and detain" noncitizens who are placed in § 1226(a) deportation proceedings "pending a decision on whether [they are] to be removed from the United States." *Guzman Chavez*, 594 U.S. at 527 (citing 8 U.S.C. § 1226(a)). DHS may issue a warrant for the noncitizen's arrest "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, . . . under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1); *see also* 8 U.S.C. § 1226 ("On a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States.").

Generally, the warrant must be issued before the noncitizen's arrest. *See* § 1226(a); *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (Section 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General

6

leading to the [noncitizen's] arrest.") (quoting § 1226(a)); *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023) (explaining that §1226 "is not even triggered unless an arrest warrant is issued," and "the subsequent provisions giving the Attorney General discretion to detain or release the arrested [noncitizen] are likewise not triggered" unless the noncitizen has "been arrested on a warrant") (internal quotation marks omitted).

Without a warrant, federal immigration officers "have more limited authority" to arrest a noncitizen. *Arizona v. United States*, 567 U.S. 387, 408 (2012). In such circumstances, federal immigration officers "may arrest [a non-citizen] for being 'in the United States in violation of any immigration law or regulation'. . . only where the [non-citizen] 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (alteration in original omitted). To conduct a warrantless arrest, federal immigration officers must therefore have an individualized suspicion that the noncitizen to be arrested poses a flight risk. 8 U.S.C. § 1357(a)(2) (empowering federal immigration officials to arrest a noncitizen without a warrant if they "ha[ve] reason to believe that the [noncitizen] so arrested is in the United States in violation of [federal immigration] law . . . and is likely to escape before a warrant can be obtained for [their] arrest"); *accord* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has

7

reason to believe that the person is likely to escape before a warrant can be obtained.").

The undersigned finds Petitioner must be released. First, Respondents arrested him before issuing an NTA. *See* Doc. 12, Ex. 2 (NTA dated January 22, 2026); Doc. 13, Ex. 2, at 2 (noting Petitioner was placed under arrest by ICE on January 21, 2026). Respondents lacked statutory authority to conduct the arrest under § 1226, as removal proceedings were not yet pending. *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 1236.1(b)(1); *Arango v. Genalo*, 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (determining that the petitioner's due process rights were violated because she "was not served with a NTA [until] *after* her arrest," in contravention of § 1236.1(b)(1)).

Second, Respondents did not determine whether Petitioner posed a flight risk before conducting the warrantless arrest. *Se*e Doc. 13, at 7 ("Respondents had already arrested Petitioner when they issued Form I-200, before any records check[] could have been conducted, according to their own narrative, and thus, before any probable cause could have been developed."). Respondents make no argument on this score.[5] In any event, Respondents introduced no evidence and, as such, failed to establish that they had reason to believe

---

[5]    Petitioner argues he has not received a bond hearing, which is incorrect. Doc. 1, at 16; *see* Doc. 12, Ex. 1.

Petitioner was "likely to escape before a warrant [could] be obtained for his arrest." *See* 8 U.S.C. § 1357(a)(2); *see also Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (providing factors that may be used to determine the propriety of a warrantless arrest under section 1357, such as whether the noncitizen cooperated with Border Patrol agents and whether she has a job, a stable residence, "ties to the community," or a criminal history), *aff'd in part*, 2026 WL 1223250 (7th Cir. May 05, 2026) ("And, if requiring the government to comply with § 1357(a)(2) prompts ICE to rely more on I-200 warrants issued under § 1226(a), such indirect, collateral effects do not run afoul of § 1252(f)(1)."). Petitioner has lived in the United States for almost four years, is legally working, and has no criminal history. So, Petitioner should be released. *See also Nguyen v. Dep't of Homeland Security*, No. CIV-26-87-R, 2026 WL 1181075, at *4 n.6 (W.D. Okla. Apr. 30, 2026) ("The warrant was also served on Petitioner a day after his arrest . . . and is a separate regulatory violation that is not raised by Petitioner. (citing *Guarnizo v. Quinones*, 2026 WL 982816, at *3 (M.D. Fla. Apr. 13, 2026)) (record citation omitted).

> **C.    Respondents violated Petitioner's due process rights when they arrested him.**

9

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest under the Due Process Clause, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from

10

immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they arrested him and placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending nearly four years here. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not challenge Petitioner's assertions that he did not violate any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

11

additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was arrested without a warrant.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026). Petitioner received no procedural safeguards to determine whether his detention were justified, and thus Respondents detained him without any stated cause. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover,* 2026 WL 452351, at *11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025. . . . [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court

recognizes that the government has an interest in enforcing immigration laws," the government's interest in arresting Petitioner without a warrant or a determination whether he posed a risk of flight is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza*, 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for four years.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily arrested him without a warrant. Based on these findings, the undersigned recommends the Court grant the habeas corpus petition and release Petitioner from detention.[6]

---

[6]    The Court finds that it need not reach Petitioner's remaining arguments. As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to

13

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and **order his immediate release. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Cimarron Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker.

The undersigned advises Respondents of their right to file an objection to this Report and Recommendation with the Clerk of this Court by May 21, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[7] The undersigned further advises the Government that failure to make

---

unambiguously authorize fees in habeas actions challenging immigration detention").

[7]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas

timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 18th day of May, 2026.

_____

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

15